# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GREGORY IAMARTINO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:10cv824 (MRK) |
| | : | |
| CITY OF BRIDGEPORT, | : | |
| BRYAN T. NORWOOD, and | : | |
| ADAM RADZIMIRSKI, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

In June 2007, Plaintiff Gregory Iamartino, a police officer for the City of Bridgeport, was shot with a taser during a training exercise which he had been required to attend. He claims that the individual Defendants in this case—Bridgeport Chief of Police Brian Norwood and Deputy Chief of Police Adam Radzimirski—intentionally inflicted emotional distress upon him, violated his substantive due process rights under the Fourteenth Amendment, and, in the case of Chief Norwood, retaliated against him in violation of the First Amendment after he complained about his treatment. Officer Iamartino further claims that the City of Bridgeport is liable for these injuries because of its failure to supervise and train its employees.

Defendants seek summary judgment, denying that they violated Officer Iamartino's constitutional rights in any way. The Court agrees. Thus, Defendants' Motion for Summary Judgment [doc. # 21] is GRANTED as to all of Officer Iamartino's federal claims. The Court declines to exercise supplemental jurisdiction over his state law claims of intentional infliction of emotional distress; these are DISMISSED without prejudice.

1

# I.

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record, *see* Fed. R. Civ. P. 56(c), and it must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).

The moving parties—here, Defendants—bear the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where no rational finder of fact could find in

favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown*, 654 F.3d at 358 (quotation marks omitted).

## II.

Although the parties dispute several facts in this case, the Court is able to resolve the present motion having read them, and presented them below, in the light most favorable to Officer Iamartino, the non-moving party. *See Holcomb*, 521 F.3d at 137.

In June 2007, Deputy Chief Radzimirski advised the commanding officers of the Tactical Narcotics Unit, of which Officer Iamartino was a member, that taser training would be held the following week and that officers would themselves have to be tased in order to be certified to use a taser. Chief Norwood had told the Deputy Chief that he wanted officers to appreciate the effects of the taser, including the effects it might have on officers should one be used against them in the line of duty.

Officer Iamartino attended the taser training course at the Bridgeport Police Academy on June 12, 2007. He was surprised when told that he would have to be tased in order to be certified. Three of his fellow attendees at the class voiced complaints to the training officer about the plan to tase them—a plan that they and Officer Iamartino agreed was "stupid." Officer Iamartino was concerned about his preexisting health problems and his lack of knowledge about how being shot with a taser might affect them.

In response to the officers' complaints, the training officer contacted Chief Norwood and reported back that any officer not willing to get shot with the taser would not participate in the training and could leave and go home. Two class participants did so, although when Deputy Chief Radzimirski—who arrived at the training center after the controversy erupted—asked that they be called back, one returned.

Officer Iamartino was tased in the back while being held by two other officers; he pulled his groin and suffered pain for several days thereafter as a result of being shot. Untrained officers removed the taser barbs from Officer Iamartino's back. At the time, Officer Iamartino felt that he and the others had been ordered to submit to being shot. However, when the portion of the class in which the taser shots were administered was over, two attendees had not been tased. To Officer Iamartino's knowledge, neither was ever disciplined for his refusal.

Several days later, then-Associate City Attorney Barbara Massaro visited the police station on unrelated business and became upset when she saw Officer Iamartino wearing a taser, as tasers had not yet been approved by her office. Attorney Massaro spoke to her superior and ordered Officer Iamartino to remove his taser. Officer Iamartino then complained to her about having been ordered to submit to the taser shot. Upset, she suggested that he seek help from his union.

On June 20, 2007, Officer Iamartino and three other officers requested a meeting with Chief Norwood to discuss the taser training, at which they felt they had received conflicting orders about whether getting tased was voluntary. Those attending the meeting also told Chief Norwood their worry that Deputy Chief Radzimirski would retaliate against them for complaining about the way he acted at the training.

In October 2007, Officer Iamartino and his partner were called before a lieutenant in the narcotics unit who recommended that they be disciplined for failing to respond to motor vehicle stops and calls from other officers while on duty. They were instructed to write a report on their alleged infractions; Officer Iamartino's report, addressed to Deputy Chief Radzimirski, ended by claiming that he could "only assume" that the threatened discipline was "retaliation for complaining to Chief of Police Bryan Norwood about the taser debacle." Defs.' Ex. H [doc.

# 25]. In response, Deputy Chief Radzimirski initiated a new disciplinary action against Officer Iamartino for his characterization of the training as a "debacle." On December 5, 2007, Chief Norwood penalized Officer Iamartino for the initial infraction by taking away one holiday and issued a written reprimand for the debacle comment.

## III.

A plaintiff pursuing a First Amendment retaliation claim must first show that he engaged in activity that is protected by the First Amendment. *See Ricciuti v. Gyzenis*, 832 F. Supp. 2d 147, 153 (D. Conn. 2011). In the context of government employment, this requires courts to determine "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee." *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 420-22 (2006)). Both inquiries are questions of law suitable for resolution at the summary judgment stage. *See Jackler*, 658 F.3d at 235, 237; *Ricciuti*, 832 F. Supp. 2d at 154.

Officer Iamartino identifies three instances of speech which he claims cross the First Amendment threshold: first, his conversation with Barbara Massaro about "the issue of being ordered shot despite there not being a policy," Mem. in Opp. [doc. # 33-2] (Iamartino Aff.) ¶ 8; second, his meeting with Chief Norwood in which he and others discussed their concerns about the taser training; and, third, the written report in which he referred to "the taser debacle."

Looking at the "content, form, and context of a given statement, as revealed by the whole record," *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)), it is clear that Officer Iamartino's criticisms of the way the taser training was carried out were "complain[ts] solely about his own dissatisfaction with the conditions of his own employment." *Id.* at 174. As the Second Circuit has said, "Speech that, although touching on

a topic of general importance, primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern." *Jackler*, 658 F.3d at 236 (quotation marks omitted).

More clearly still, Officer Iamartino's speech was all made solely as an employee. In *Garcetti v. Ceballos*, the Supreme Court confronted a case in which a deputy district attorney's memo was commissioned by the plaintiff's employer and written "pursuant to [the plaintiff's] official duties. 547 U.S. at 421–22. Just as the memo in *Garcetti* was held by the Supreme Court to be unprotected speech, Officer Iamartino's written report—a required response to disciplinary action being taken against him—must similarly count as employee, not citizen, speech.

Officer Iamartino's complaints to Chief Norwood and Attorney Massaro are similarly unprotected, as "there is no relevant analogue to speech by citizens who are not government employees." *Id.* at 423. Had Officer Iamartino employed "channels available to citizens generally," *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 204 (2d Cir. 2010), rather than raising "concerns up the chain of command at his workplace," *id.* (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), this question would be a closer one. But Officer Iamartino at no point made any comments outside the office or "communicated with the public" about his worries regarding tasers or taser training at the Bridgeport Police Department. *Id.* at 205. Thus, as a matter of law, Officer Iamartino cannot show that he faced retaliation for speech made as a citizen and protected by the First Amendment.[1] Defendants are therefore entitled to summary judgment as to Count Three of Officer Iamartino's Complaint [doc. # 1].

---

[1] The Court notes that *Barclay v. Michalsky*, 451 F. Supp. 2d 386 (D. Conn. 2006), the primary case that Officer Iamartino relies upon in his attempt to circumvent *Garcetti*, was superseded by a subsequent ruling in which Judge Arterton concluded that the plaintiff's First Amendment claim *was* that of an employee, and thus barred by *Garcetti. See Barclay v. Michalsky*, 493 F. Supp. 2d 269, 271 (D. Conn. 2007), *aff'd* 368 F. App'x 266 (2d Cir. 2010).

# IV.

In addition to his First Amendment retaliation claim, Officer Iamartino also claims that "an order to undergo an assault from [a] weapon he carries in order to do his job violates his due process." Opp. to Mot. for Summ. J. [doc. # 33] at 8.

"Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). "[A] plaintiff must demonstrate . . . that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). As the Supreme Court has noted, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849; *see also id.* at 846 (forbidding "the exercise of power without any reasonable justification in the service of a legitimate governmental objective").

The Supreme Court has held that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992). This distinguishes government employer cases from the many substantive due process cases involving prisoners or persons confined in mental institutions. For this reason, the Court finds the most relevant guidance in *Johnson v. Newburgh Enlarged School District*, 239 F.3d 246 (2d Cir. 2001), a substantive due process case concerning a gym teacher's use of force against a student. Addressing the "constitutional right to be free from the use of excessive force in the non-seizure, non-prisoner context," the Second Circuit counseled in *Johnson* that

7

> [f]actors to be considered . . . include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.
>
> With respect to the last factor, if the force was maliciously or sadistically employed for the very purpose of causing harm in the absence of any legitimate government objective and it results in substantial emotional suffering or physical injury, then the conduct is presumptively unconstitutional.

*Id.* at 251-52 (quotation marks, alterations, and citations omitted).

Defendants here have offered several legitimate government objectives for Bridgeport's taser training program. As the parties have agreed, "Chief Norwood's rationale for this policy was that he wanted officers to have an appreciation for the effects of the taser, how it can incapacitate someone, and with that knowledge of its incapacitation, how it can also be used against the officers and incapacitate them . . . ." Defs.' Loc. R. 56(a)(1) Statement [doc. # 21-2] ¶ 10. Officer Iamartino has offered no evidence that the tasing he experienced was "intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849. Nor has he offered any reason to believe that the decision to tase the entire Tactical Narcotics Unit was malicious or sadistic.

Officer Iamartino's primary argument rests on a slippery slope: If nothing in the Constitution prohibits Bridgeport from requiring its taser-bearing officers to be tased, can it also require that those bearing pepper spray be sprayed in the face? Must those who wield sticks submit to beating? And could the Constitution ever permit situations in which police officers were forced to accept being shot with their own guns as a condition of employment? *See* Opp. to Mot. for Summ. J. [doc. # 33] at 9.

Another federal court recently rejected precisely this sort of argument in *Robert v. Carter*, 819 F. Supp. 2d 832, 851 (S.D. Ind. 2011), and for good reason: The balance in these

cases between the reason for applying force and the amount of force applied shifts noticeably from example to example. The lesson to be learned from being shot with a gun—presumably, that it causes enormous pain—would be far outweighed by the pain itself. By comparison, experiencing the debilitating but nonpermanent effects of a taser is not just to experience a lesser degree of force compared to that of a gun, but to do so for better reason. As Defendants here and the court in *Robert* both claimed, the tasing of officers "is directly related to training deputies to handle the effects of combatants whom they tase and of being tased themselves." *Id.* at 852. The Court has been given no reason to question these justifications for Bridgeport's taser training program, and it finds that the planning and execution of that training, while far from perfect in this instance, do not approach the conscience-shocking level that the Due Process Clause requires.

Because the Court has found as a matter of law that no violation of Officer Iamartino's constitutional rights occurred, his *Monell* claims against the City of Bridgeport for its failure to supervise and train its employees must also be dismissed. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, Defendants are entitled to summary judgment as to Counts One, Two, Four, and Six of Officer Iamartino's Complaint [doc. # 1].

## V.

Officer Iamartino's remaining counts involve state law claims of intentional infliction of emotional distress against Chief Norwood and Deputy Chief Radzimirski. Where no federal

claims remain in a lawsuit, however, the district court may decline to exercise supplemental jurisdiction and leave the state law claims to be considered by the state courts. *See* 28 U.S.C. § 1367(c)(3) (noting that a district court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). The Second Circuit advises that "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010).

Since the Court has granted summary judgment in favor of Defendants on all of Officer Iamartino's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, Counts Five and Seven of his Complaint [doc. # 1] are DISMISSED without prejudice to refiling in state court. Defendants' Motion for Summary Judgment [doc. # 21] is GRANTED as to the remaining five counts. **The clerk is instructed to close this case.**

**IT IS SO ORDERED.**

  /s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 28, 2012.**